UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT C.S.,[1] | No. 1:26-cv-03437-TLN-CSK |
| Petitioner, | A# 221-278-953 |
| v. | |
| WARDEN OF THE CALIFORNIA CITY CORRECTIONAL CENTER, et al., | **ORDER** |
| Respondents. | |

This matter is before the Court on *pro se* Petitioner Robert C.S.'s ("Petitioner") Petition for Writ of Habeas Corpus ("the Petition").[2]  (ECF No. 1.)  Respondents filed an opposition.[3] (ECF Nos. 5, 9.)  For the reasons set forth below, the Petition is GRANTED and Respondents are ordered to IMMEDIATELY RELEASE Petitioner.  (This Order does not reach the April 27, 2026 order granting voluntary departure; the deadline to appeal that order is May 27, 2026.)

---

[1]    The Court omits Petitioner's full name to protect sensitive personal information. *See* Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

[2]    *Pro se* pleadings are given the benefit of liberal construction. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (per curiam).

[3]    In their opposition, Respondents also ask this Court to lift its Order not to transfer Petitioner out of this district during the pendency of this case. (ECF No. 5 at 1.)  That request is now moot given the Court's grant of relief herein.

1

## I.    FACTUAL BACKGROUND

This matter arises out of Petitioner's challenge to his civil immigration detention. Petitioner is not a United States citizen, but he is an asylum applicant.  (ECF No. 1 at 6.)

About December 24, 2024, Petitioner entered the United States and encountered immigration authorities.  (ECF No. 9-1 at 2.)  Petitioner expressed a fear of returning to his home country and he was detained and processed for a credible fear determination.  (*Id.* at 3.)  On December 27, 2024, an asylum officer found Petitioner had established a credible fear of persecution.  (*Id.*)  Two days later, Petitioner was issued a Notice to Appear for further immigration proceedings, enrolled in the Alternatives to Detention program, and was released from custody on his own recognizance to be reunited with his family.  (*Id.*; ECF No. 9-2 at 2.)

Petitioner has no criminal history.  (ECF No. 9-2 at 3.)

On February 11, 2026, U.S. Immigration and Customs Enforcement ("ICE") detained Petitioner during an ICE appointment.  (ECF No. 9-2 at 2.)  On April 27, 2026, nearly three months into Petitioner's detention, an immigration judge issued an order granting voluntary departure.  (ECF No. 5-1.)

Petitioner has now been detained for over three months.  In that time, Petitioner has not received any hearing as to his detention.  (ECF No. 1 at 6.)  Petitioner challenges the constitutionality of his civil detention.  (ECF No. 1.)

## II.    STANDARD OF LAW

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States."  *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2).  "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody."  *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law.  28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest."  *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001).  Accordingly, a

district court's habeas jurisdiction includes challenges to immigration detention.  *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

**III.    ANALYSIS**

Petitioner claims his detention without a bond hearing violates the Fifth Amendment Due Process Clause.  (ECF No. 1 at 6.)  The Fifth Amendment prohibits government deprivation of an individual's life, liberty, or property without due process of law.  U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017).  The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status.  *Zadvydas*, 533 U.S. at 693.  These due process rights extend to immigration proceedings and detention.  *Id.* at 693–94.

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution.  *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

*i.  Liberty Interest*

As for the first step, the Court finds Petitioner has a protectable liberty interest. "[F]reedom from imprisonment is at the 'core of the liberty protected by the Due Process Clause.'"  *Hernandez*, 872 F.3d at 993 (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)). "Even where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause."  *See Rico-Tapia v. Smith*, No. 25-CV-00379 SASP-KJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025).  Liberty interest may be strengthened over time.  *See, e.g., Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (noting the Government's actions in allowing petitioner to remain in the community for over five years strengthened petitioner's liberty interest).

The Court finds Petitioner has a clear liberty interest in his continued freedom protected by the Due Process Clause.  Petitioner has established a life in the United States since his release

from immigration custody and he was reunited with his family.  Moreover, "the government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[ ] to live up to the . . . conditions [of release]." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24, 2025) (quoting *Morrissey*, 408 U.S. at 482) (modifications in original); *see also Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL 2637503, at *6 (N.D. Cal. Sept. 12, 2025) ("[A] noncitizen released from custody pending removal proceedings has a protected liberty interest in remaining out of custody.").  Even if he is subject to removal or his freedom could be revoked by statute, Petitioner's liberty is still protected by the Due Process Clause.  *See Hernandez*, 872 F.3d at 993, *Zadvydas*, 533 U.S. at 693.

Respondents do not make a meaningful argument in opposition, but state that Petitioner was initially subject to detention under 8 U.S.C. §1225(b) and, at some point will be subject to 8 U.S.C. § 1231.  (ECF Nos. 5, 9.)

As an initial matter, the vast majority of courts across this Circuit, including this one, have found 8 U.S.C. § 1226(a), not § 1225(b), applies to noncitizens like Petitioner who reside in the United States after the government releases them.  *See Morales-Flores v. Lyons*, No. 1:25-CV-01640-TLN-EFB, 2025 WL 3552841, at *3 (E.D. Cal. Dec. 11, 2025) (explaining this Court's reasons for taking this position and collecting cases); *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL 2637503, at *8 (N.D. Cal. Sept. 12, 2025) (collecting cases).  For these reasons, and consistent with this Court's numerous prior rulings, the Court finds Petitioner's initial detention was governed by § 1226(a) from at least the time of his arrest until the time that an order of removal becomes final.  Therefore, Petitioner was entitled to the process required by § 1226(a) over these last many months, including a custody or bond hearing, at minimum.

Moreover, even assuming Respondent's detention authority has shifted from § 1226(a) to § 1231 recently, a shifting statutory basis does not unilaterally terminate Petitioner's liberty interest or vanish his due process claims.  *See Alvarenga Matute v. Wofford*, No. 1:25-CV-01206-KES-SKO, 2025 WL 2996577, at *4 (E.D. Cal. Oct. 24, 2025) (A "change in the applicable statutory authority [for detention] does not render moot petitioner's due process claim"); *Doe v.*

*Becerra*, 697 F. Supp. 3d 937, 943 (N.D. Cal. 2023) ("[J]ust as the "shall" in [§] 1226 gives way to as-applied due process challenges, so too must the 'shall' in [§] 1231(a)" (citing *Demore v. Kim*, 538 U.S. 526 (2003)); *Nielsen v. Preap*, 586 U.S. 392 (2019)); *Hernandez Gomez v. Becerra*, No. 23-cv-01330-WHO, 2023 WL 2802230, at *3 (N.D. Cal. Apr. 4, 2023))).
"Petitioner's rights are not limited to those laid out by statute." *Mohammed v. Warden of California City Det. Ctr.*, No. 1:26-CV-00118-DJC-CSK, 2026 WL 192368, at *2 (E.D. Cal. Jan. 26, 2026) (citing *Nielsen v. Preap*, 586 U.S. 392, 420 (2019)); *see also Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (citing *Bd. of Pardons v. Allen*, 482 U.S. 369, 371 (1987)) ("Governmental actions may create a liberty interest entitled to the protections of the Due Process Clause."). With a clear liberty interest, the Court next turns to the procedural safeguards that were owed to Petitioner.

### ii.   Procedures Required

As to the second step — what procedures or process is due — the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

First, as explained above, Petitioner has a substantial private interest in his own liberty that is unquestionably affected by Respondents' actions detaining him. Despite his interest in maintaining his liberty, Petitioner has now been detained for over three months without any opportunity to be heard as to the justification of his detention, separated from his family. Petitioner's private interest may be diminished slightly because he agreed to voluntary departure, but he is entitled to depart of his own accord and, as discussed above, an agreement to leave the country does not extinguish Petitioner's liberty while he is here. Accordingly, this factor weighs in favor of finding Petitioner's private interest has been impacted by his detention. *See Manzanarez v. Bondi*, No. 1:25-CV-01536-DC-CKD (HC), 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025) (finding similarly).

Second, the risk of erroneous deprivation is considerable given Petitioner has not received adequate process, either pre- or post-detention.  Because civil immigration detention is "nonpunitive in purpose and effect," a "special justification" must outweigh Petitioner's protected liberty interest in order for detention to comport with due process.  *Zadvydas*, 533 U.S. at 690.  Where removal is not imminent under a final order of removal, "[t]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by [ ] bond or alternative conditions."  *Hernandez*, 872 F.3d at 994.  At the time of Petitioner's arrest, and at least the first three months of his detention, Petitioner was not subject to a final order of removal.  Additionally, Respondents own records show Petitioner has no criminal history (ECF No. 9-2 at 3), nor do Respondents contend that Petitioner is a danger to the public or a flight risk.  Indeed, it appears that he was arrested while complying with ICE's request to check-in.  Therefore, the risk that he was detained without proper justification is high.  *A.E. v. Andrews*, No. 1:25-CV-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025).

Finally, the government's interest is low, and the effort and cost required to provide Petitioner with procedural safeguards are minimal.  *See Garcia v. Andrews*, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025).  Although the Court recognizes the government's interest in immigration enforcement, that interest does not outweigh all procedural safeguards.  Notice and custody determination hearings are routine processes for Respondent and are indeed the very processes required under 8 U.S.C. § 1226(a).  Any delay in detention (if justified) for the time to provide notice and a hearing would have been minimal.  Any burden associated with the provision of these processes does not outweigh Petitioner's liberty interest and the risk of erroneous deprivation.

The Court finds that, under these circumstances, Respondents were required to provide notice and a pre-deprivation hearing.  The United States Supreme Court "usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property."  *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original).  The Court describes post-deprivation remedies as the "special case" where those are "the only remedies the

6

State could be expected to provide." *Id.* at 129.  Respondents have not provided any substantive opposition to the contrary, nor do they argue that Petitioner should be a "special case."  (*See generally* ECF Nos. 5, 9.)

Yet, Petitioner was not provided a pre-deprivation hearing.[4]  Neither have Respondents provided a post-deprivation hearing in over three months of detention.  Therefore, Respondents violated the Fifth Amendment and Petitioner's procedural due process rights.

**IV.    CONCLUSION**

Respondents detained Petitioner in violation of the Fifth Amendment.  Accordingly, IT IS HEREBY ORDERED:

1.  The Petititon for Writ of Habeas Corpus (ECF No. 1) is GRANTED.

2.  Respondents' request to lift this Court's Order not to transfer Petitioner during the pendency of this case (ECF No. 5) is denied as moot.

3.  Respondents must IMMEDIATELY RELEASE Petitioner Robert C.S. (A# **221-278-953**) from custody under the same conditions he was released prior to his current detention. Respondents shall not impose any additional restrictions on him, unless such restrictions are determined to be necessary at a future pre-deprivation/custody hearing.  At the time of release, Respondents must **provide a copy of this Order to Petitioner** and return all of Petitioner's documents and possessions.

4.  Respondents must file a **notice of compliance** with this Order **by May 25, 2026.**

5.  Respondents are ENJOINED from re-detaining Petitioner absent compliance with constitutional protections, including a minimum of seven-days' notice and a pre-deprivation hearing before a neutral fact-finder where: (a) Respondents show material changed circumstances demonstrate a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) Respondents demonstrate by clear and convincing evidence that the government's interest in protecting the public or ensuring Petitioner appears at future immigration proceedings outweighs his constitutionally protected

---

4    There is also no evidence in the record that Petitioner received any notice or a warrant for his arrest as required under 8 U.S.C. § 1226(a).

interest in remaining free from detention. *Zadvydas*, 533 U.S. at 690; *Hernandez*, 872 F.3d at 990.  At any such hearing, Petitioner shall be allowed to have counsel present.

6.  The Clerk is directed to serve this Order on the **California City Corrections Center**.

7.  The Clerk of the Court shall enter judgment in favor of Petitioner and close this case.

IT IS SO ORDERED.

Date: May 21, 2026

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE